IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MARQUS LEONARD,                )
#237013                        )
    Plaintiff,              )
                               )
v.                             )   CIVIL ACTION NO.: 2:11-CV-185-MEF
                               )            [WO]
WARDEN LEEPOSEY DANIELS;       )
OFFICER TIMOTHY MAY, and       )
OFFICER JAMES WILSON,          )
                               )
    Defendants.             )

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

In this 42 U.S.C. § 1983 action, Plaintiff, a state inmate, challenges the constitutionality of actions taken against him during his incarceration at the Elmore Correctional Center in Elmore, Alabama.[1]  Named as defendants are Warden Leeposey Daniels ["Daniels"], Officer Timothy May ["May"], and Officer James Wilson ["Wilson"].[2] Plaintiff complains that on December 16, 2010, Defendants subjected him to excessive force in violation of his Eighth Amendment rights. Plaintiff further claims that Defendants failed to protect him from harm.  Plaintiff seeks injunctive relief and damages.

In accordance with the orders of the court, Defendants filed an answer, special report, and supporting evidentiary material in response to the allegations contained in the complaint. The court then informed Plaintiff that Defendants' special report, may, at any time, be treated

---

[1]During the pendency of this action Plaintiff was transferred to another state correctional facility.

[2]Defendants Alabama Department of Corrections and "Elmore Prison Administration" were dismissed by prior order.  *Doc. No. 13.*

as a motion for summary judgment, and the court explained to Plaintiff the proper manner in which to respond to a motion for summary judgment.  Plaintiff filed a response to the special report filed by Defendants.  This case is now pending on Defendants' motion for summary judgment.  Upon consideration of the motion, Plaintiff's opposition to the motion, and the supporting and opposing evidentiary materials, the court concludes that the motion for summary judgment filed by Defendants is due to be granted in part and denied in part.

## I.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former Fed. R. Civ. P. 56 omitted); *see* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[3] The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record,

___

[3]Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions."  Fed. R. Civ. P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination."  *Id.*  "'Shall' is also restored to express the direction to grant summary judgment."  *Id.*  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule.

including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [- now dispute -] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-24.

Defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact. Thus, the burden shifts to Plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [by citing to materials in the record including affidavits, relevant documents or other materials] the court may . . . grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it."). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail

on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted).  Consequently, to survive Defendants' properly supported motion for summary judgment, Plaintiff is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Fed. R. Civ. P. 56(e). "If the evidence [on which the nonmoving party relies] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson*, 477 U.S. at 249-50. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).  Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (per curiam) (plaintiff's "conclusory assertions . . . , in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment"); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate "produced nothing, beyond his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("[M]ere verification of party's own conclusory allegations is not sufficient to oppose a motion for summary judgment. . . .").  Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to

4

establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita*

5

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-24 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show no genuine dispute as to a requisite material fact); *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact.  *Beard*, 548 U.S. at 525; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Thus, Plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.  In this case, Plaintiff has demonstrated a genuine dispute of material fact in order to preclude entry of summary judgment on his excessive force claim against Defendants Daniels, May, and Wilson, and Plaintiff has demonstrated a genuine dispute of material fact precluding entry of summary judgment on his failure to protect claim against Defendants May and Wilson.  Plaintiff has failed to demonstrate a genuine dispute of material fact precluding entry of summary

judgment on his failure to protect claim against Defendant Daniels.

## II. DISCUSSION

### A. Absolute Immunity

To the extent the alleged constitutional violations Plaintiff lodges against Defendants are made against them in their official capacities, they are entitled to absolute immunity from monetary damages. Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S. Ct. 1114, 1125 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, it is clear that the Defendants are state actors entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994).

7

*B.  Injunctive Relief*

Plaintiff is  no longer incarcerated at the Elmore Correctional Center.  The transfer or release of a prisoner renders moot any claims for injunctive or declaratory relief.  *See  County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *see also Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) (past exposure to even illegal conduct does not in and of itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing present injury or real and immediate threat of repeated injury).  As it is clear from the pleadings and records before the court that Plaintiff is no longer incarcerated at the Elmore Correctional Center, his request for equitable relief has been rendered moot.

*C.  Qualified Immunity*

With respect to Plaintiff's excessive force claim lodged against Defendants in their individual capacities, they argue they are entitled to qualified immunity.  However, "'there is no room for qualified immunity' in Eighth Amendment . . . excessive force cases because they require a subjective element that is 'so extreme' that no reasonable person could believe that his actions were lawful. *Johnson v. Breeden*, 280 F.3d 1308, 1321-22 (11th Cir. 2002)." *Danley v. Allen*, 540 F.3d 1298, 1310 (11th Cir. 2008).  "Moreover, an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held personally liable for his nonfeasance."  *Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002).  Thus, a qualified immunity defense is not available when a plaintiff properly pleads the use of excessive force and the only question

for a federal district court is whether the plaintiff has alleged facts sufficient to survive a motion for summary judgment.  *Id.* at 1302; *see also Hudson v. McMillian,* 503 U.S. 1, 9-10 (1992); *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996).  Accordingly, this court will consider whether Plaintiff's allegation that Defendants used excessive force against him, which the court must take as true for purposes of summary judgment, sets forth a violation of his Eighth Amendment rights.

### D.  Excessive Force Claim

Plaintiff maintains that on December 16, 2010, Defendants subjected him to excessive force when he showed no signs of being a threat to the officers.  Defendants' evidence includes affidavits, an incident report prepared shortly after the matter about which Plaintiff complains occurred, and a ruling finding that Plaintiff refused to contest his violation on December 16, 2010, of an institutional rule when he threatened May.  *Doc. Nos. 18, 19.* According to the report, the incident began when  Wilson advised Lieutenant McKee that unknown inmates were making threatening remarks and huddling in a corner of Dorm B1, discussing throwing batteries at Wilson and another officer.  *Doc. No. 19-4* at 8.  Lt. McKee ordered inmate Cedric Williams to submit to a strip search, at which point Plaintiff said, "why ya'll f**king with that man, this is b**lsh**."  *Id.*  According to the report, Plaintiff continued to yell profanity despite orders to be quiet.  Lt. McKee then instructed May to escort Plaintiff to the shift office for questioning.  Once there, Lt. McKee debriefed  Daniels, and Plaintiff continued to yell, stating to May "you gonna make me kill your weak ass, you

ho's got the right one.  I ain't gonna be locked up forever.  When I get out, I am gonna f\*\*k one of you weak ass nig\*\*s up.  I just left St. Claire and I ain't scare of nobody." *Id.* According to the report, when Daniels was attempting to leave the office while Plaintiff was handcuffed, Plaintiff "leaned head first toward Daniels in an aggressive manner. Daniels utilized the Jugular Notch (PPCT) and Brachial Stun" to repel Plaintiff, and he was placed face down on the floor and subdued.  *Id.* at 6-7.  Plaintiff apologized for his negative behavior and was then taken to the Health Care Unit at the Staton Correctional Facility.  *Id.* Plaintiff was disciplined for making threats against May.  At the hearing on the rule violation, Plaintiff refused to call witnesses and said, "I'm guilty because I can't beat it.  It's them against me.  I didn't say all that to Officer May.  I did tell Officer May that I would not be in here always, after they whipped my ass.  It wasn't a threat it was out of hurt.  They did me wrong and beat me for no reason." *Doc. No. 19-5* at 8.   Daniels, May, and their witness maintain that Daniels's use of force against Plaintiff on December 16, 2010, was justified after Plaintiff acted in an aggressive manner towards Daniels, Plaintiff suffered no injury, and Plaintiff apologized for his behavior. *Daniels Aff. - Doc. No.* 19-1 at 1; *Daniels Aff. - Doc. No. 19-4* at 1-2; *May Aff. - Doc. No. 19-5* at 2; *McKee Aff. - Doc. No. 19-6* at 1-2. Wilson states that he did not accompany Plaintiff to the shift office and thus was not part of the events in the office. *Wilson Aff. - Doc. No. 19-3* at 1.  May and Wilson deny using any force against Plaintiff, and they instead maintain that Plaintiff fell in the hallway.  *May Aff. - Doc. No. 19-5* at 1-2; *Wilson Aff. - Doc. No. 19-3* at 1.

Claims of excessive force by prison officials against convicted inmates are governed by the Eighth Amendment's proscription against cruel and unusual punishment. *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999). The standard for evaluating such excessive force claims is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7 (relying on *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). This standard contains both a subjective and objective component. *Hudson*, 503 U.S. at 8. The subjective component requires that prison "officials act[ed] with a sufficiently culpable state of mind." *Id.* (internal quotations omitted). With respect to the objective component, a plaintiff must show that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Id.* Factors to consider in making this determination include "the extent of injury suffered," "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Id.* at 7 (citation omitted); *see also Whitley*, 475 U.S. 321 (listing factors); *Skrtich v. Thornton*, 280 F.3d 1295, 1300-01 (11th Cir. 2002). "From such considerations inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley,* 475 U.S. 321. The "absence of serious injury" provides some indication of the level of force used, and the "prohibition of 'cruel and unusual' punishments necessarily excludes

from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson,* 503 U.S. at 9-10 (quoting *Whitley*, 475 U.S. at 327 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (further quotation marks omitted)).   "Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) (per curiam).   In *Wilkins*, the Supreme Court held that an inmate stated an Eighth Amendment excessive force claim when he alleged "he was punched, kicked, kneed, choked, and body slammed 'maliciously and sadistically' and '[w]ithout any provocation,'" and he suffered "a bruised heel, back pain, and other injuries requiring medical treatment." *Id.* at 38; *see also Hall v. Bennett,* 447 F. App'x 921, 923-24 (11th Cir. 2011) (unpublished) (per curiam) (citing *Wilkins,* 559 U.S. at 37-38) ("[W]hile [plaintiff's] medical reports did not note any obvious injuries, we are mindful of the fact that the focus of the inquiry is on the nature of the force applied, not the extent of the injury.").   Recognizing that the relief in such a case could be slender, the Court added that "even if [the inmate] succeeds, the relatively modest nature of his alleged injuries will no doubt limit the damages he may recover." *Wilkins*, 559 U.S. at 40.

In contrast to Defendants' version of the events, Plaintiff maintains that he was not combative, abusive, or disobedient with Daniels, May, and Wilson on December 16, 2010,

and, therefore, their use of force against him was unnecessary and unprovoked.  With regard
to the Eighth Amendment claim, Plaintiff's original complaint stated, "While in the shift
office at Elmore in handcuffs the Warden and 2 officers beat me up when I showed no use
of force.  I have medical charts where I was beaten and further information that will prove
it."  *Doc. No. 1*.  In his affidavit filed in response to Defendants' report, Plaintiff maintains
that May and Wilson escorted him to the shift office and "when we got outside I was attacked
and assaulted by both officers [May and Wilson], which I sustained a few injuries.  I was
choked and slapped numerous times."  *Pl.'s Aff. - Doc. No. 24* at 1.  Inside the shift office
with Daniels and May, he said he would not "always be locked up and they had no right or
business to put their hands on [him] for any reason.  *Id.*  Plaintiff further states that when he
entered the shift office, he spoke with Daniels and avers that during their discussion:

> Then [Daniels] got up and started walking toward me.  When he got to me he
> said you think you run my prison and asked the shift officer clerk (name
> unknown to me) women to leave the shift office.  When she left the shift
> office he stated this is my prison motherf**ker and punched me in the left side
> of my jaw.  Then he started to chop me in the throat.  We backed up in the
> hallway and he hit me again in the right side.  He then grabbed my handcuffs
> and tried to lift my hands and push (rush) me into the wall.  He kept slapping,
> punching, and he ran my head into the wall.  After he ran me into the copy
> machine he tripped me up and I fell he slapped me across the head.  Lt. McKee
> then slapped me and asked me who was running this sh*t now.  He then tried
> to stomp my fingers in the floor but I balled my fist up where he couldn't.
>
> They then (Lt. and Warden) told officers to take me and get a body chart.  The
> Warden told them to tell the nurse I fell in the hallway.

*Id.* at 2.

Defendants argue that Plaintiff's claims are vague and conclusory.  They argue that

Daniels's use of force against Plaintiff on December 16, 2010, was justified after Plaintiff acted in an aggressive manner towards Daniels.   Under the circumstances, they argue, Daniels use of force was reasonable and done for the purpose of restoring order and not maliciously or sadistically.   Defendants further maintain that Plaintiff may not prevail on his excessive force claim due to the minor nature of his injuries.   May and Wilson deny using any force against Plaintiff, and they instead maintain that he fell in the hallway.   *Doc. Nos. 18, 19.*

Here, in response to Defendants' report, Plaintiff maintains that May and Wilson escorted him to the shift office, and outside the office they subjected him to excessive force. He further maintains that Daniels also subjected him to excessive force inside the shift office. Although his account of the events in his complaint differ somewhat from those he describes in his later affidavit, he has demonstrated a genuine issue of material fact on the question whether the  prison employee defendants maliciously and sadistically attacked him for no reason other than to cause him harm.   As explained, Defendants have denied Plaintiff's allegations regarding the use of force and maintain at no time during the incident in question was  more force used then necessary to subdue and gain control of Plaintiff.   Similar to the scenario in *Bennett*, however, this case presents "two competing, contradictory stories of what happened," and this court cannot "improperly weigh[ ] the witnesses' credibility by favoring [Defendants'] account over [Plaintiff's]." *Bennett,* 447 F. App'x at 924.

Plaintiff's medical records reflect that on December 16, 2010, he received a Body

14

Chart, and he informed medical personnel that he "'fell in hallway'" and the "officer had to use handcuffs." *Doc. No. 19-2* at 14.  On physical exam Plaintiff was found to have a "small scratch noted to both elbows" and a small scratch to his left shoulder.  *Id.*  At the conclusion of his examination, medical staff gave Plaintiff "TAO" ["triple antibiotic ointment"] for his scratches and released him to the custody of correctional staff.  *Id.*  Plaintiff was transferred to the Kilby Correctional Facility the next day for placement in segregation. Pursuant to the transfer and his housing assignment, Plaintiff received a Body Chart. Plaintiff indicated he had scratches but was okay.  Medical personnel noted on exam that Plaintiff had "superficial scrapes [ ] to left shoulder and wrists." The nurse applied  antibiotic cream to Plaintiff's scratches and told him to seek medical attention if his condition worsened.  *Doc. No. 19-2* at 12-13.

The United States Supreme Court in *Wilkins* held that the minor nature of an inmate's injuries is not dispositive of an excessive force claim. *Wilkins*, 559 U.S. at 34 (Dismissal of "a prisoner's excessive force claim based entirely on . . . [a] determination that his injuries were '*de minimis*' [is improper] . . . [as it] is at odds with *Hudson's* direction to decide excessive force claims based on the nature of the force rather than the extent of the injury. . . ."); *Bennett,* 447 F. App'x at 923-24 ("[W]hile [plaintiff's] medical reports did not note any obvious injuries, we are mindful of the fact that the focus of the inquiry is on the nature of the force applied, not the extent of the injury.").  The nature of the injuries suffered by Plaintiff will, however, remain relevant to whether Daniels, May, and Wilson actually used

force as described by Plaintiff and whether they acted "'maliciously and sadistically'. . . ."
*Wilkins*, 559 U.S. at 40.

Viewing the facts in the light most favorable to Plaintiff, as the court must at this stage in the proceedings, the court concludes Daniels, May, and Wilson are not entitled to qualified immunity as Plaintiff has alleged facts sufficient to survive these Defendants' motion for summary judgment regarding the excessive force claim lodged against them. *Skrtich*, 280 F.3d at 1301. Specifically, disputed issues of material fact exist regarding the use of force and whether Daniels, May, and Wilson acted "maliciously and sadistically" to cause harm. Consequently, the motion for summary judgment with respect to the excessive force claim presented against these Defendants in their individual capacities is due to be denied.

### E. Failure to Protect

Plaintiff maintains that Defendants failed to protect him from the assault. Defendants argue that they are protected by qualified immunity. As noted, however, a defense of qualified immunity is generally unavailable in cases involving excessive force because the use of force "maliciously and sadistically to cause harm" is clearly established to be a constitutional violation. *Skrtich*, 280 F.3d at 1301 (11th Cir. 2002). A defendant is not entitled to qualified immunity when a plaintiff properly pleads excessive force resulting from a failure to protect by the defendants. Plaintiff has properly pled his claim for relief. Thus, the only question in this case is whether he has alleged facts sufficient to survive a motion for summary judgment. *Id.* Accordingly, this court will consider the sufficiency of

16

Plaintiff's allegations that Daniels, May, and Wilson failed to protect him from the use of excessive physical force.

Jail officials may be held liable under the Constitution for acting with "deliberate indifference" to an inmate's safety when the official knows that the inmate faces "a substantial risk of serious harm" and with such knowledge disregards that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). A constitutional violation occurs only when a plaintiff establishes the existence of "a substantial risk of serious harm, of which the official is subjectively aware, . . . and [that] the official does not respond[] reasonably to the risk'. . . ." *Marsh v. Butler County*, 268 F.3d 1014, 1028 (11th Cir. 2001)(*en banc*), *quoting Farmer*, 511 U.S. at 844. Thus, in order to survive summary judgment on this claim, Plaintiff is "required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendant['s] deliberate indifference to that risk; and (3) causation." *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'" *Farmer,* 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter,* 501 U.S. 294, 299, 111 S. Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991). . . . Even assuming the existence of a serious risk of harm and causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists--and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003).

Plaintiff asserts that Daniels, May, and Wilson acted with deliberate indifference by failing to protect him from their use of excessive physical force outside and inside the shift office.  They all deny violating Plaintiff's constitutional rights. *Doc. No. 18, 19.*  Based on the previous discussion regarding defendants' use of excessive physical force on Plaintiff on December 16, 2010, however, when viewed in the light most favorable to Plaintiff, a reasonable jury could find that May and Wilson had knowledge of specific facts from which an inference could be drawn that a substantial risk of harm existed to Plaintiff outside the shift office, that these defendants actually drew this inference, and thereafter, ignored this risk. The allegations in Plaintiff's complaint and in response to Defendants' reports, taken by the court as true at this juncture, indicate that May and Wilson were together during the assault on Plaintiff and neither stopped the other.  Likewise, Wilson was present during the events in the shift office, yet stood by without intervening. The court, therefore, concludes that May and Wilson are not entitled to qualified immunity as Plaintiff has alleged facts sufficient to survive a motion for summary judgment.  Consequently, the motion for summary judgment relative to the alleged deliberate indifference to Plaintiff's safety by May and Wilson is due to be denied.

As for Daniels, however, it is undisputed that he was not present when the alleged excessive force incident occurred with May and Wilson.  Plaintiff makes no allegation that Daniels knew the events would occur or that he created an environment or policy that officers should use excessive force in such situations.  The court, therefore, concludes that Plaintiff

has not demonstrated a genuine dispute of material fact on the question whether Daniels was deliberately indifferent to another officer's use of excessive force against Plaintiff.  *See Skrtich*, 280 F.3d at 1301 ("officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held personally liable for his nonfeasance").  The motion for summary judgment relative to the alleged failure to protect by Daniels is, therefore, due to be granted.

### III.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.   Plaintiff's request for injunctive relief be DISMISSED as moot;

2.   Defendants' motion for summary judgment (*Doc. No. 19*) with respect to Plaintiff's claim for monetary damages lodged against them in their official capacities be GRANTED as Defendants are entitled to absolute immunity from these claims;

3.   The motion for summary judgment filed on behalf of Defendants Daniels, May, and Wilson (*Doc. No. 19*) with respect to Plaintiff's December 16, 2010, excessive force claim lodged against these defendants in all aspects of their individual capacities be DENIED;

4.   The motion for summary judgment filed on behalf of Defendants May and Wilson (*Doc. No. 19*) with respect to Plaintiff's December 16, 2010, failure to protect claim lodged against these defendants in all aspects of their individual capacities be DENIED;

19

5.  The motion for summary judgment filed on behalf of Defendant Daniels (*Doc. No. 19*) with respect to Plaintiff's December 16, 2010, failure to protect claim lodged against this defendant in all aspects of his individual capacity be GRANTED; and

6.  This case be SET for a bench trial before the assigned District Judge on Plaintiff's December 16, 2010, excessive force claim against Defendants Daniels, May, and Wilson, and on Plaintiff's December 16, 2010, failure to protect claim against Defendants May and Wilson.

It is further

ORDERED that on or before **December 23, 2013**, the parties may file an objection to the Recommendation.  Any objection filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file a written objection to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a *de novo* determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en*

*banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit

handed down prior to the close of business on September 30, 1981.

   Done, this 5th day of December 2013.

                              /s/Terry F. Moorer
                              TERRY F. MOORER
                              UNITED STATES MAGISTRATE JUDGE