IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| MARQUS A. LEONARD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 2:11-cv-185-MEF |
| | ) |
| LEEPOSEY DANIELS, Warden, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

Pursuant to 42 U.S.C. § 1983, Plaintiff Marqus A. Leonard ("Leonard"), a state inmate, brings this action alleging that the defendants violated his constitutional rights under the Eighth Amendment to the United States Constitution. Specifically, Leonard alleges that the defendants used excessive force against him and failed to protect him from harm during an incident that occurred on December 16, 2010, at Elmore Correctional Facility ("Elmore"). The defendants to this action are Warden Leeposey Daniels ("Warden Daniels"), Correctional Officer Timothy May ("Officer May"), and Correctional Officer James Wilson ("Officer Wilson"), but only to the extent that they are each sued in their individual capacities. The issues before this Court concern (1) whether any of the aforementioned defendants used excessive force on Leonard, (2) whether Officers Wilson or May failed to protect Leonard from harm, and (3) the nature of Leonard's injuries. After weighing the evidence and testimony offered by the parties during a bench trial held on July 14, 2014, the Court finds that judgment is due to be entered in favor of Warden Daniels, Officer May, and

Officer Wilson and against Leonard on all of Leonard's claims. In support of this judgment, the Court makes the following findings of fact and conclusions of law:

## I. FINDINGS OF FACT

Having listened carefully to the testimony from the witness stand while viewing the demeanor of the witnesses and having considered the documentary exhibits admitted into evidence, the Court finds that the credible evidence established the following facts relevant to the issues raised by the claims in this lawsuit:

1. On December 16, 2010, Leonard was an inmate at Elmore.

2. On December 16, 2010, Officer May and Officer Wilson were employed at Elmore as correctional officers.

3. On December 16, 2010, Charles McKee ("Lt. McKee") was employed at Elmore as a Lieutenant and had supervisory responsibilities over Officer May and Officer Wilson.

4. On December 16, 2010, Warden Daniels was employed as the Warden of the entire Elmore facility.

5. On December 16, 2010, Elmore housed approximately 1,176 inmates.

6. On December 16, 2010, Officer Wilson was stationed on one side of Dorm B1. Each side of the dorm houses 196 inmates. Leonard was housed in Dorm B1 on this particular date.

7. On December 16, 2010, Officer Wilson radioed for assistance in Dorm B1

because unknown inmates were making threatening remarks, huddling in the rear of the dorm, and discussing throwing batteries at Officer Wilson and another correctional officer.

8. Lt. McKee (now a captain), Officer May, and correctional officers Prince Lewis and Charles Ross responded to the call for assistance.

9. At the time, Leonard was acting in an insubordinate manner and making threatening remarks to Lt. McKee and the other correctional officers.

10. Because of Leonard's insubordinate behavior, Lt. McKee instructed Officer May to escort Leonard from Dorm B1 to the shift office, which Officer May did.

11. While Officer May was escorting Leonard to the shift office, Lt. McKee followed in close proximity. Leonard yelled profanities, exclaimed that he was not going to be locked up forever, and acted in an insubordinate manner the entire time Officer May was escorting him to the shift office.

12. Neither Officer May nor Officer Wilson used any force on Leonard on December 16, 2010.

13. The shift office at Elmore is not a particularly large space. It measures approximately 15 feet by 17 feet and contains three desks, filing cabinets, and a paper shredder.

14. Upon arriving at the shift office, Leonard was handcuffed and was standing close to the entrance door. Warden Daniels was in the shift office when Leonard, Officer May, and Lt. McKee arrived. Leonard was belligerent in the shift office, despite being

restrained.

15. An inmate can still pose a threat to himself and others, even if they are handcuffed, because they can kick, spit, and thrash. Inmates will also try to slide their handcuffs behind their back, step through them, and bring their arms to the front, which poses an even greater danger, as the inmate can then punch, elbow, and possibly choke others, and can grasp and use objects, such as firearms or batons, with their hands.

16. When Warden Daniels tried to exit the shift office a few minutes after Leonard arrived, Leonard leaned his head in toward Warden Daniels in what Warden Daniels perceived to be an aggressive and threatening manner.

17. Warden Daniels then used two moves, the jugular notch and the brachial stun, along with a verbal command to back away, to move Leonard away from him. Warden Daniels's use of these moves pushed Leonard into the hallway. Leonard was handcuffed during this time but was still acting in an aggressive and threatening manner.

18. When Leonard was moved into the hallway, Officer May was also in the hallway. Once in the hallway, Leonard yelled something along the lines of: "take these handcuffs off me and I'll kill all you sons of b\*\*ches or mother f\*\*kers."

19. Warden Daniels thought that Officer May might take Leonard's handcuffs off, so Warden Daniels stepped in between Officer May and Leonard and lifted Leonard's handcuffs up behind Leonard's back as far as they could go. Leonard tried to run from Warden Daniels on his toes, and Warden Daniels kicked his feet out from underneath him

and Leonard landed on the floor on his buttocks. When Leonard tried to get up and continue resisting, Warden Daniels hit him with an open palm on the back of his head.

20. Leonard was then taken to Staton Health Care for treatment.

21. Nurse Caine performed a body chart on Leonard and noted that Leonard told her he "fell in the hallway" and officers had to use handcuffs. The body chart noted that Leonard had small scratches on both elbows and a small scratch on his left shoulder. At trial, Nurse Caine described the scratches as "superficial."

22. On December 17, 2010, Leonard was transferred from Elmore to Kilby Correctional Facility's ("Kilby") segregation unit. When Leonard arrived at Kilby, another body chart was completed by Nurse McMullin. That body chart reflects that Leonard told Nurse McMullin, "I have scratches on me. I'm OK." The body chart further notes that Leonard had superficial scrapes to his left shoulder and wrists.

23. At a disciplinary hearing held on December 22, 2010, Leonard pleaded guilty to threatening Officer May on December 16, 2010.

24. Leonard paid an approximately $3-4 dollar co-pay for a cream to put on his scratches following the incident on December 16, 2010.

25. Other than the scratches and the cream co-payment, there is no evidence that Leonard suffered any other damages as a result of the incident that took place on December 16, 2010.

26. The Alabama Department of Correction's policy on use of force provides, in

part, that

> The use of physical force shall be restricted to instances of justifiable self-defense against physical assault (actual or threatened), protection of others, protection of property, prevention of escape or apprehension of escapees, "quelling" a disturbance, or when an inmate exercises physical resistance to a lawful command.

27. On March 15, 2011, Leonard filed this lawsuit.

## II. CONCLUSIONS OF LAW

1. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

2. Venue is appropriate pursuant to 28 U.S.C. § 1391(b).

3. Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm." *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986).

4. To determine if an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including: "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson v. McMillian*, 503 U.S. 1, 7–8 (1992).

5. From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321.

6. In *Hudson*, the Supreme Court held that the use of excessive physical force against a prisoner may constitute cruel and unusual punishment even though the prisoner does not suffer serious injuries. *Hudson*, 503 U.S. at 9. However, an excessive force claim "necessarily excludes from constitutional recognition *de minimi* uses of physical force, provided that the use of force is not a sort repugnant to the conscience of mankind." *Id*. at 9–10 (internal quotation marks omitted). The injuries received are only one factor for the Court's consideration; they are not the sole consideration. *Id.* at 7. A district court must also consider the need for the application of force, the amount of force exerted, the threat reasonably perceived by the official, and any efforts to temper the severity of the forceful response. *Skrtich v. Thornton*, 280 F.3d 1295, 1305 n.9 (11th Cir. 2002).

7. Even when an officer is not a participant in the use of excessive force, he can still be held liable if he fails to take reasonable steps to protect the victim. *See Ledlow v. Givens*, 500 Fed. App'x 910, 914 (11th Cir. 2012). A prison official violates the Eighth Amendment "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014) (internal quotation marks and emphasis omitted). For a deliberate indifference failure-to-protect claim, a plaintiff must demonstrate a substantial risk of serious harm, the defendant's deliberate indifference to that risk, and causation. *Id.* (internal quotation marks omitted).

8. The credible evidence establishes that the only force used against Leonard on

December 16, 2010, was used by Warden Daniels in a good faith effort to maintain or to restore discipline and to quell Leonard's aggressive behavior, and not maliciously and sadistically to cause harm to Leonard. Therefore, Leonard's claim against Warden Daniels for excessive force fails.

9. There is no credible evidence establishing that Officer May or Officer Wilson used any force on Leonard on December 16, 2010. Therefore, Leonard's claim against Officer May and Officer Wilson for excessive force fails.

10. There is no credible evidence establishing that any of the defendants rammed Leonard into a cement wall, rammed Leonard into a copier, punched Leonard in the jaw, chopped Leonard in the throat, choked Leonard, or stomped on Leonard's fingers.

11. The credible evidence establishes that the injuries Leonard received on December 16, 2010, were minor and that the force used on Leonard that day by Warden Daniels in the shift office and in the hallway of the shift office was not excessive or unreasonable. The amount of force used was reasonably limited to the force necessary to restrain and to subdue Leonard and to maintain order and discipline at Elmore.

12. There is no credible evidence establishing that there existed a substantial risk of serious harm to Leonard on December 16, 2010, and that either Officer May or Officer Wilson acted with deliberate indifference to that risk. Thus, Leonard's claim against Officer May and Officer Wilson for failure to protect fails.

13. In sum, the credible evidence does not support Leonard's claims for excessive force and failure to protect.

14. Consistent with this ruling, the Court will enter a written final judgment in favor of Warden Daniels, Officer May, and Officer Wilson and against Leonard on all of his claims in this action with Leonard taking nothing by his complaint.

DONE this the 17th day of July, 2014.

/s/ Mark E. Fuller
UNITED STATES DISTRICT JUDGE